```
UNITED STATES DISTRICT COURT                :    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
JESUS LAZO,                         :            06 Civ. 5438 (JCF)
                                    :
                Plaintiff,          :            MEMORANDUM OPINION
                                    :                AND ORDER
        - against -                 :
                                    :
UNITED STATES OF AMERICA, JOHN      :
DOES 1-6,                           :
                                    :
                Defendants.         :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Jesus Lazo brings this action under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-2680, and pursuant to the principles established in <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging that he was wrongly arrested and detained in connection with charges that he had violated the terms of special parole. The parties consented to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c). The defendant United States of America (the "Government") has moved to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56. The plaintiff, in turn, has cross-moved for summary judgment. Because this Court lacks jurisdiction over the plaintiff's claims, the Government's motion to dismiss is granted, and the plaintiff's cross-motion is denied.

1

Background

On January 4, 1989, in the United States District Court for the Southern District of Texas, Jesus Lazo was convicted after pleading guilty to federal narcotics and money laundering charges. (Judgment and Probation/Commitment Order dated Feb. 21, 1989 ("Judgment"), attached as Exh. A to Declaration of Sharon A. Gervasoni dated June 20, 2007 ("Gervasoni Decl.")). He was sentenced to five years in prison, to be followed by five years special parole.[1] (Judgment). Taking into account jail credit time, the plaintiff's term of incarceration was due to expire on November 16, 1993. (Sentence Monitoring Computation Data, attached as Exh. B to Gervasoni Decl., at 2). On January 16, 1991 , Mr. Lazo, who was a native of Cuba, was paroled to the Immigration and Naturalization Service (the "INS") for detention pending deportation. (Certificate of Parole dated Dec. 20, 1990, attached

---

[1] Special parole was a sanction imposed on certain persons convicted of narcotics offenses at the time Mr. Lazo committed his crimes. It entailed a period of community supervision subject to certain conditions and was served after the person convicted had completed any term of imprisonment. Special parole was imposed by the court at the time of sentencing. 21 U.S.C. § 841(c) (repealed 1984). By contrast, regular parole provided for the conditional release of eligible convicted persons who had served a prescribed portion, but not all, of their prison term. Regular parole was granted in the discretion of the United States Parole Commission after consideration of certain statutory factors. 18 U.S.C. § 4201 et seq. (repealed 1984). In the Sentencing Reform Act of 1984, Congress abolished all forms of parole for offenses committed after November 1, 1987. At the same time, it established supervised release, which, like special parole, is served following release from incarceration, but is not limited to drug offenders. 18 U.S.C. § 3583.

as Exh. C to Gervasoni Decl.). However, the INS did not deport the plaintiff and, instead, released him from detention in March 1994. (Deposition of Jesus Lazo ("Lazo Dep."), excerpts attached as Exh. A to Declaration of Pierre G. Armand dated June 22, 2007 ("Armand Decl."), at 125). At that time, the plaintiff was provided with no information with respect to his special parole term. After release, Mr. Lazo resided briefly with a sponsor in Florida and then moved to New York. (Lazo Dep. at 129-32). He never reported to any parole or probation authorities.

In July 1998, prior to expiration of the plaintiff's term of special parole, Senior United States Probation Officer Gilbert J. Mireles commenced an investigation because Mr. Lazo had failed to report for supervision. (Declaration of Gilbert J. Mireles dated June 22, 2007 ("Mireles Decl."), ¶ 3). Unable to locate the plaintiff, Officer Mireles advised the United States Parole Commission (the "Commission") that Mr. Lazo could not be found and sought guidance. (Mireles Decl., ¶¶ 4-6). At the Commission's request, Officer Mireles submitted a violation report, and the Commission then issued a warrant for the arrest of Mr. Lazo on September 21, 1998. (Mireles Decl., ¶¶ 7-9 & Exhs. B, C; Gervasoni Decl., Exh. F). The plaintiff was taken into custody on September 30, 2004. (Mireles Decl., ¶ 9; Gervasoni Decl., Exh. G).

A parole revocation hearing was held before a Commission hearing examiner on February 23, 2005. (Hearing Summary, attached

as Exh. M to Gervasoni Decl., at 1). The examiner found that "[t]here is no information available to indicate that [Mr. Lazo] ever received a copy of a special parole term certificate or that he was aware that he was to report upon his release from INS custody." (Hearing Summary at 3). Accordingly, the examiner recommended that Mr. Lazo not be found to have violated parole, that he be reinstated to the term of special parole which had expired, and that he be released with no further conditions. (Hearing Summary at 3). The Commission adopted these recommendations, and the plaintiff was released from custody on March 4, 2005. (Notice of Action, attached as Exh. N to Gervasoni Decl.; Notice of Release and Arrival, attached as Exh. A to Amended Complaint).

   Thereafter, Mr. Lazo filed the complaint in this action, alleging that the United States and six John Doe defendants had violated his constitutional rights, had negligently caused him harm, had falsely arrested and imprisoned him, and had intentionally inflicted emotional distress upon him. The Government now moves to dismiss on the grounds that the Court lacks jurisdiction over both the FTCA and the constitutional claims. In the alternative, the Government seeks summary judgment on the basis that it had probable cause to arrest Mr. Lazo and to detain him pending a parole revocation hearing.

Discussion

"The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." Presidential Gardens Associates v. United States, 175 F.3d 132, 139 (2d Cir. 1999). Thus, the United States is immune from suit absent an express waiver of sovereign immunity, as are federal government agencies and officials when acting in their official capacities. See Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). Even when the United States waives sovereign immunity, it may do so in a limited or conditional manner: the United States retains its immunity except "'as it consents to be sued . . ., and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). "'On a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of [the] evidence that [subject matter] jurisdiction exists.'" Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004) (quoting Garcia v. Akwesasne Housing Authority, 268 F.3d 76, 84 (2d Cir. 2001)).

  A. Negligence Claims

In enacting the FTCA, Congress waived the sovereign immunity of the United States with respect to claims arising from "the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Thus, "[t]he [FTCA] is a limited waiver of sovereign immunity, making the Federal government liable to the same extent as a private party for certain torts of employees acting within the scope of their employment. <u>United States v. Orleans</u>, 425 U.S. 807, 813 (1976).

However, conduct that falls within the FTCA's "discretionary function" exception is beyond the reach of the statute and is therefore not subject to the waiver of sovereign immunity. That exception exempts claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has established a two-step inquiry for analyzing whether the exception applies. First, it must be determined whether the conduct violated a legal mandate: "[i]f the employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." <u>United States v. Gaubert</u>, 499 U.S. 315, 324-25 (1991). The plaintiff suggests that there are two grounds on which this prong of the test is satisfied. He argues that "[t]he exception does not apply to the breach of duty so

egregious that the officials performing and failing to perform, had no discretion to function as they did." (Memorandum of Law in Support of the Plaintiff's Motion for Summary Judgment and in Opposition to the Defendants [sic] Motion to Dismiss and for Judgment ("Pl. Memo.") at 29). But this contention runs contrary to the statutory language indicating that the exception applies even where discretion is abused.

The plaintiff also asserts that the Government violated its mandatory duty under 28 C.F.R. § 2.29 to issue a certificate of parole. According to § 2.29(a), "[a] grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." This section, however, applies to regular parole, which, as discussed above at note 1, is distinct from the special parole term to which Mr. Lazo was sentenced:

> first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in non-custodial supervision, or "street time."

Rich v. Maranville, 369 F.3d 83, 85 (2d Cir. 2004) (quoting Strong v. United States Parole Commission, 141 F.3d 429, 431 (2d Cir. 1998)) (internal quotation marks omitted). That § 2.29 refers to regular parole is apparent from the terms of subsection (b), which refers to a parole hearing -- a hearing that plays no part in

7

special parole, which is imposed by the sentencing judge. Nevertheless, 28 C.F.R. § 2.57, which is captioned "Special parole terms," also includes a requirement for issuance of a certificate. According to that section, "[a]t the time of release under the regular sentence, whether under full term expiration or under a mandatory release certificate or a parole certificate, a separate Special Parole Term certificate will be issued to the prisoner by the Bureau of Prisons." 28 C.F.R. § 2.57(b). It is thus arguable that the Government had a duty to provide Mr. Lazo with such a special parole certificate at the time of his release from INS custody. That is of no help to him in this case, however, because the conduct alleged to have caused him injury is not the failure to issue a certificate, but the issuance and execution of an arrest warrant and his subsequent detention. If these latter acts did not violate a regulatory mandate, then the first prong of the discretionary function exception still applies.

Mr. Lazo has identified no regulation that curbs the ability of the Government to issue a warrant for the arrest of someone believed to have violated the terms of special parole. To the contrary, 28 C.F.R. § 2.44(a) provides:

> If a parolee is alleged to have violated the conditions of his release, and satisfactory evidence thereof is presented, the Commission or a member thereof may:
>
>    (1) Issue a summons requiring the offender to appear for a preliminary interview or local revocation hearing.
>
>    (2) Issue a warrant for the apprehension and return

of the offender to custody."

"Congress invested the [United States Parole] Commission with wide discretion to decide whether it might proceed by warrant or summons against a person charged with violation of parole . . . ." Galante v. Warden, Metropolitan Correctional Center, 573 F.2d 707, 708 (2d Cir. 1977); accord McMillan v. United States Attorney General, 644 F. Supp. 777, 779 (S.D.N.Y. 1986) ("The Parole Commission has discretion in determining the conditions under which it may issue a warrant."). Accordingly, the first prong of the test for the discretionary function exception is met. See Davis v. United States, No. Civ. A. H-86-1841, 1987 WL 9416, at *1 (S.D. Tex. March 31, 1987) ("The Parole Commission's decision to issue a warrant is exempted from the Federal Tort Claims Act under 28 U.S.C. § 2680(a) as a discretionary function.").

So, too, is the second prong, which asks whether "the action challenged . . . involve[d] the permissible exercise of policy judgment." Berkovitz v. United States, 486 U.S. 531, 537 (1988); see also Gaubert, 499 U.S. at 324-25 & n.7. A determination by the Commission to issue a warrant plainly reflects policy considerations: it involves weighing such factors as the seriousness of the violations alleged, the potential danger to the community of having the parole violator remaining at-large, and the likelihood that the violator will attempt to avoid apprehension. See Howard v. United States, No. 99-3865, 2000 WL 1272590, at *2

(E.D. Pa. Aug. 28, 2000) (finding that decision to "seek a search warrant involves a judgment and a choice grounded in policy considerations" and is subject to discretionary function exception).

The conduct giving rise to the plaintiff's claims of negligence therefore fall within the FTCA's discretionary function exception, and those claims are barred by sovereign immunity. Consequently, this Court lacks subject matter jurisdiction over them.

B. Intentional Torts

Mr. Lazo also asserts claims of abuse of process, false arrest, false imprisonment, and intentional infliction of emotional distress. The FTCA, however, explicitly excludes from its coverage "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). Accordingly, under the terms of the statute itself, there is no jurisdiction over any of the intentional torts alleged by the plaintiff except, perhaps, for intentional infliction of emotional distress ("IIED").

"In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." Lambertson v. United States, 528 F.2d 441, 443 (2d

Cir. 1976). Some IIED claims arise out of conduct unrelated to the exceptions specified in § 2680(h) and so may be asserted under the FTCA. See, e.g., Raz v. United States, 343 F.3d 945, 947-48 (8th Cir. 2003) (15 years of illegal surveillance by FBI); Sabow v. United States, 93 F.3d 1445, 1456-57 (9th Cir. 1996) (pattern of abuse by military officials against family members during investigation of death of serviceman); Truman v. United States, 26 F.3d 592, 595 (5th Cir. 1994) (sexual harassment). Here, however, Mr. Lazo's IIED claims -- based on Officer Mireles' recommendation that a warrant be issued, on statements in the warrant application, and on a letter advising the plaintiff that a revocation hearing had been scheduled (Amended Complaint, ¶¶ 37-46) -- appear to arise out of the alleged defamatory nature of these communications, and as such come within § 2680(h)'s exception for libel and slander. See Griebsch v. Weaver, No. 7:05-CV-0958, 2005 WL 2260374, at *5 (N.D.N.Y. Sept. 16, 2005) (barring claim for IIED where court found it to "arise out of [] alleged defamation); Borawski v. Henderson, 265 F. Supp. 2d 475, 484 (D.N.J. 2003) (same).

Even if that were not the case, the plaintiffs's IIED claim is frivolous. "The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d

11

787, 790 (2d Cir. 1996); accord Silver v. Kuehbeck, No. 05 Civ. 35, 2005 WL 2990642, at *7 (S.D.N.Y. Nov. 7, 2005); Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).  The conduct of the Government employees in this case in seeking an arrest warrant and proceeding to a revocation hearing for a parolee who had never appeared for supervision plainly cannot be characterized as "extreme and outrageous."

There is, however, an exception to the exception for intentional torts set forth in § 2680(h).  Claims arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution are actionable under the FTCA when committed by "investigative or law enforcement officers of the United States Government," which is defined to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).  Nevertheless, the Second Circuit has held that parole officers are not law enforcement officers for the purpose of the FTCA, Wilson v. United States, 959 F.2d 12, 14-16 (2d Cir. 1992).  Therefore each of the intentional torts alleged by Mr. Lazo is beyond the jurisdiction of the Court.

    C. Bivens Claims

Finally, Mr. Lazo asserts claims under the Bivens doctrine for alleged violations of his constitutional rights.

> In a Bivens action, alleged victims of constitutional violations by federal officials may recover damages

> despite the absence of any statute specifically conferring such a cause of action. Such an action, however, must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.

Robinson, 21 F.3d at 510 (citations omitted). Here, the plaintiff has served only one defendant -- the United States -- and yet he has not identified any waiver of sovereign immunity for Bivens actions brought against the Government. This Court therefore lacks jurisdiction over his constitutional claims. Moreover, the Supreme Court has declined to imply a Bivens-type right of action against the Government and its agencies. See Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 486 (1983). Thus, even if sovereign immunity were not a bar, Mr. Lazo's constitutional claims would be subject to dismissal for failure to state a claim upon which relief could be granted.

Conclusion

For the reasons discussed above, the Government's motion to dismiss this action for lack of subject matter jurisdiction is granted,[2] and the plaintiff's cross-motion for summary judgment is

---

[2] Insofar as the Amended Complaint names as defendants John Does 1-6, the plaintiff has never identified or served these parties, and the claims against them must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. See Bisson v. United Nations, No. 06 Civ. 6352, 2007 WL 2154181, at *11 (S.D.N.Y.

---

July 27, 2007).

denied as moot.  The Clerk of Court is respectfully requested to enter judgment accordingly and close the case.

SO ORDERED.

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 9, 2007

Copies mailed this date:

Paul D. Petrus, Jr., Esq.
350 Fifth Avenue, Suite 7720
New York, New York 10118

Pierre G. Armand, Esq.
Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York 10007

---

July 27, 2007).

14